DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Warren Guenther, appeals his conviction out of the Lorain County Court of Common Pleas. This Court affirms.
 I. {¶ 2} Appellant was indicted on March 7, 2002, on one count of sexual imposition in violation of R.C. 2907.06(A)(1), a misdemeanor of the third degree; and one count of gross sexual imposition in violation of R.C. 2907.05(A)(1), a felony of the fourth degree. The indictment alleged that the acts giving rise to the counts occurred "during the time period from December 1, 2001 through December 31, 2001[.]" On April 3, 2002, upon appellant's request, the State filed a bill of particulars, in which it stated that the acts giving rise to the charge of sexual imposition occurred "[o]n or about December 1, 2001 through December 31, 2001," while the acts giving rise to the charge of gross sexual imposition occurred "[d]uring the time period from December 1, 2001 through December 31, 2001[.]" On February 14, 2003, appellant filed a notice of alibi, in which he accounted for his whereabouts "during December 2001 and January 2002[.]" Prior to trial, the trial court granted the State's motion to modify the indictment to expand the time frame to encompass the time period through January 2002.
 {¶ 3} On February 14, 2003, the matter proceeded to trial. Appellant moved for a mistrial on the first day of trial. The trial court granted appellant's motion for a mistrial, but subsequently denied appellant's motion to dismiss the charges on the grounds of double jeopardy. Appellant petitioned the United States District Court for the Northern District of Ohio for habeas corpus relief. The district court denied appellant's petition, and the criminal matter was rescheduled for trial.
 {¶ 4} The matter proceeded to trial on the two counts on November 1, 3, 4, and 5, 2004. At the conclusion of trial, the jury found appellant guilty on both counts. The trial court subsequently classified appellant as a sexually oriented offender. The trial court sentenced appellant to prison, then suspended the prison time and imposed community controls sanctions.
 {¶ 5} Appellant timely appeals his conviction, setting forth seven assignments of error. This Court rearranges the assignments of error to facilitate review.
 II. ASSIGNMENT OF ERROR VII
"THE VERDICTS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 6} Appellant argues that his convictions were against the manifest weight of the evidence. This Court disagrees.
"In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, paragraph one of the syllabus.
This discretionary power should be exercised only in exceptional cases where the evidence presented weighs heavily in favor of the defendant and against conviction. Id. at 340. Further, "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency."State v. Hoehn, 9th Dist. No. 03CA0076-M, 2004-Ohio-1419, at ¶ 37, quoting State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462.
 {¶ 7} In this case, appellant was convicted of sexual imposition in violation of R.C. 2907.06(A)(1), which states:
"No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when * * * [t]he offender knows that the sexual contact is offensive to the other person, or one of the other persons, or is reckless in that regard."
 {¶ 8} R.C. 2907.01(B) defines "sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."
 {¶ 9} Pursuant to R.C. 2901.22(B):
"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 10} Pursuant to R.C. 2901.22(C):
"A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."
 {¶ 11} Appellant was also convicted of gross sexual imposition in violation of R.C. 2907.05(A)(1), which states:
"No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when * * * [t]he offender purposely compels the other person, or one of the other persons, to submit by force or threat of force."
 {¶ 12} R.C. 2901.01(A)(1) defines "force" as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing."
 {¶ 13} Pursuant to R.C. 2901.22(A):
"A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."
 {¶ 14} Appellant was a long-time volunteer at a local community center. The victim had volunteered at the center and was then hired as the Meals on Wheels program director. This case arises out of three alleged incidents in which appellant touched the victim's breasts.
 {¶ 15} In this case, appellant denies that he ever touched the victim inappropriately. However, the victim testified that appellant made comments about her breasts on a regular basis, telling the victim that she had a "nice rack" and "nice tits," and asking her whether there was anything in which she did not look good. She testified that appellant once hugged her and rubbed his chest against hers. The victim testified that appellant and another man blocked her exit from an office on one occasion. She testified that, when she attempted to pass by the men, appellant touched her breast. The victim testified that on another occasion appellant approached her from behind in the community center food room, placed his knee between her legs, spun her around and placed his hand on her breast. The victim testified that on yet a third occasion, appellant pushed his chair up alongside the victim as she sat at a table in the community center small room, preventing her from leaving. The victim testified that appellant then began rubbing her back, reaching around her shoulders and ultimately touching her breast as he pretended to be reaching for something on the table. The victim testified that she told appellant to stop each time, sometimes screaming for help. She testified also that appellant prefaced each touching with a sexually based comment. In addition, the victim testified that, except for the office incident which involved another man, appellant touched her at times and places when her supervisor was running errands and there were no other people nearby in a position to witness the touchings.
 {¶ 16} The victim's supervisor at the community center testified that, while she never saw appellant touch the victim inappropriately, the victim reported the incidents to her and she saw the victim appear nervous and visibly shaken on many occasions. The supervisor testified that she only confronted appellant once about the situation, because she was afraid of him. She testified that she attempted to prevent appellant's access to the victim, although there were times when she had to leave the center to run errands.
 {¶ 17} The State also presented the testimony of another young woman, who had a similar experience with appellant. Candy Michelle Wilson was a teenager, who was required to perform some community service at the community center. She testified that appellant cornered her on her first day at the community center when no one else was in the area. She testified that appellant made a comment about her breasts and that he began rubbing her thigh, inching his hand up to her private area.
 {¶ 18} Appellant presented the testimony of Marge Spatafore, who testified that appellant typically greeted others at the community center with a hug. She testified that appellant was known to tell off-color jokes but that that was just "Warren being Warren."
 {¶ 19} Appellant further presented the testimony of the victim's sister-in-law, who testified that she was not aware of any incidents between appellant and the victim. There was evidence that, while the victim and her sister-in-law were once close, the relationship had become strained, because the victim was in the process of a divorce.
 {¶ 20} The weight of the evidence supports the conclusion that appellant touched the victim's breast on at least three occasions. The weight of the evidence supports the conclusion that the victim found each of the touchings inappropriate and offensive and communicated that to appellant. In addition, the weight of the evidence supports the conclusion that appellant forcibly maneuvered the victim into a position in the food room, so that he could touch her breast; that appellant forcibly blocked the victim's exit from the office, so that he could touch her breast; and that appellant forcibly prevented the victim from leaving her chair, so that he could touch her breast in the small room.
 {¶ 21} A thorough review of the record compels this Court to find no indication that the jury lost its way and committed a manifest miscarriage of justice in convicting appellant of one count of sexual imposition and one count of gross sexual imposition. This Court finds that appellant's convictions are not against the manifest weight of the evidence. Appellant's seventh assignment of error is overruled.
 ASSIGNMENT OF ERROR I
"THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT FAILED TO INSTRUCT THE JURY THAT IT MUST BE UNANIMOUS IN ITS DETERMINATION AS TO THE CONDUCT OF MR. GUENTHER THAT CONSTITUTED THE GROSS SEXUAL IMPOSITION FOR WHICH MR. GUENTHER WAS CONVICTED AND THE SEXUAL IMPOSITION FOR WHICH MR. GUENTHER WAS CONVICTED."
 {¶ 22} Appellant argues that the trial court committed plain error by failing to instruct the jury that it must be unanimous in its determination as to appellant's specific conduct, which constituted gross sexual imposition and sexual imposition. This Court disagrees.
 {¶ 23} Appellant failed to object to the jury instructions during trial. Appellant's failure to object to the jury instructions waives all challenges except plain error. State v.Skatzes, 104 Ohio St.3d 195, 2004-Ohio-6391, at ¶ 52, citingState v. Underwood (1983), 3 Ohio St.3d 12, syllabus.
 {¶ 24} Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." To constitute plain error, the error must be obvious and have a substantial adverse impact on both the integrity of, and the public's confidence in, the judicial proceedings. State v. Tichon (1995),102 Ohio App.3d 758, 767. A reviewing court must take notice of plain error only with the utmost caution, and only then to prevent a manifest miscarriage of justice. State v. Bray, 9th Dist. No. 03CA008241, 2004-Ohio-1067, at ¶ 12. This Court may not reverse the judgment of the trial court on the basis of plain error, unless appellant has established that the outcome of the trial clearly would have been different but for the alleged error.State v. Kobelka, 9th Dist. No. 01CA007808, 2001-Ohio-1723, citing State v. Waddell (1996), 75 Ohio St.3d 163, 166. In addition, the Ohio Supreme Court has stated that "[a]n erroneous jury instruction does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise." State v. Cunningham (2004), 105 Ohio St.3d 197,207, citing State v. Underwood (1983), 3 Ohio St.3d 12, syllabus.
 {¶ 25} Crim.R. 31 requires that a jury verdict in a criminal case be unanimous.
 {¶ 26} In support of one count of gross sexual imposition and one count of sexual imposition, the State presented evidence of three distinct incidents which involved appellant's touching the victim's breast on three occasions and her buttocks on one occasion. The State presented evidence of the "office incident," wherein appellant and another man blocked the victim's exit from the room and suggested a ménage a trois. There was evidence that, when the victim pushed through the two men, appellant touched her breast while the other man touched her buttocks. The State presented evidence of the "food room incident," wherein appellant approached the victim from behind in a food storage room, placed his knee between her legs, flipped her around to face him, and touched her breast. Finally, the State presented evidence of the "small room incident," wherein the victim was working at a table when appellant entered the room, sat by the victim, and pushed his chair against hers, trapping her. There was evidence that appellant then began rubbing the victim's back and later reached around the victim and touched her breast. Appellant argues that he may have been convicted of either count by less than a unanimous jury, because some jurors may have found only that the office incident occurred, while others found that only the food room or storage room incident occurred.
 {¶ 27} The trial court instructed the jury that "[t]he charges set forth in each count in the indictment constitute a separate and distinct matter." The trial court further gave two separate unanimity instructions, directing that "all 12 jurors have to sign the verdicts[,]" and that "whenever all 12, repeat all 12, jurors agree upon a verdict, you will sign the verdict in ink * * *"
 {¶ 28} The Ohio Supreme Court has stated that "the prevailing rule is, `a general unanimity instruction will ensure that the jury is unanimous on the factual basis for a conviction[.]"State v. Johnson (1989), 46 Ohio St.3d 96, 104, quoting UnitedStates v. Beros (C.A.3, 1987), 833 F.2d 455, 460.
 {¶ 29} Appellant asserts that Johnson stands for the proposition that "if a single count can be divided into two or more `distinct conceptual groupings,' the jury must be instructed specifically that it must unanimously conclude that the defendant committed acts falling within one such grouping in order to reach a guilty verdict." The Johnson Court adopted the holding of the United States Supreme Court, stating that "when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive * * * the verdict stands if the evidence is sufficient with respect to any one of the acts charged." Id., quoting Turner v. United States (1970), 396 U.S. 398, 420. An exception exists, however, where a single count may be divided into two or more "distinct conceptual groupings." In such a case, the trial court must instruct the jury that "it must unanimously conclude that the defendant committed acts falling within one such grouping in order to reach a guilty verdict." Johnson,46 Ohio St.3d at 104, citing United States v. Gipson (C.A. 5, 1977), 553 F.2d 453, 458. This Court finds appellant's reliance on Johnson in this particular regard, however, misplaced.
 {¶ 30} In Johnson, the defendant was charged with aggravated murder with a specification that the defendant was committing or attempting to commit or fleeing immediately after committing or attempting to commit aggravated robbery. Id. at 96. In that case, therefore, the indictment itself actually charged several acts in the disjunctive. In finding a general unanimity instruction adequate, the Johnson court reasoned:
"However, even assuming arguendo that the jury had split on the alternatives offered by the specification, each juror still would have agreed that the appellant had murdered Eunice Graster in conjunction with at least attempting to commit aggravated robbery, and this alone would have been adequate to sustain the conviction." (Emphasis omitted.) Id. at 105.
 {¶ 31} The reasoning and holding of Johnson are inapplicable to the instant case. In this case, appellant was charged with one count of sexual imposition in violation of R.C.2907.06(A)(1), which states:
"No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when * * * [t]he offender knows that the sexual contact is offensive to the other person, or one of the other persons, or is reckless in that regard."
Appellant was also convicted of gross sexual imposition in violation of R.C. 2907.05(A)(1), which states:
"No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when * * * [t]he offender purposely compels the other person, or one of the other persons, to submit by force or threat of force."
 {¶ 32} Although the indictment contains disjunctive language in that appellant might have been convicted for having sexual contact with the victim, causing the victim to have sexual contact with him, or causing the victim and another to have sexual contact with one another, this language does not form the basis of appellant's assignment of error. Rather, appellant argues that the trial court's general unanimity instruction was inadequate to ensure that the jury was unanimous in finding that one specific incident, e.g. the "office incident," formed the sole basis for its guilty verdict in regard to one specific charge, e.g. gross sexual imposition. Accordingly, the analysis of Johnson is inapposite. Nevertheless, this Court finds merit to appellant's argument that the trial court committed some error.
 {¶ 33} The State presented evidence regarding three distinct incidents and four distinct sexual contacts with the victim. In addition, the State argued to the jury during closing regarding the various incidents:
"Let's look at the statement they were substantially different stories. No, the attacks are all the same. The allegations are that the State must not have believed [the victim], because we only did two charges. You know what? [The victim] doesn't decide the facts of the charges. The State will take many incidents and place them under one time and one timeframe.
"And they can consider each and every one of those as a violation. They can satisfy them independently. There is no reason to do that. That's our decision. Those are our policies. To say he can somehow read into what we believe or not believe, that is not fair. We brought the charges. I'm the one with the duty to seek justice, as well, or we wouldn't be here if I wasn't trying to seek justice."
 {¶ 34} This Court agrees with appellant's argument that the State attempted to support each separate count of the indictment with the same evidence from three different incidents. The State could have charged appellant with three separate counts, but chose not to do so at its discretion. The error arises, however, where the jury was not specifically instructed under these circumstances that it must be unanimous in its determination that one distinct incident formed the basis for its guilty verdict in regard to one count, while another distinct incident formed the basis for its guilty verdict in regard to the other count. Because the trial court only gave a general unanimity instruction, specifically that the jury must be unanimous in its verdict, it is unclear whether the jury convicted appellant of gross sexual imposition, for example, by finding the element of force in regard to the food room incident, and the element of sexual contact in regard to the office incident. Moreover, based on the trial court's general instruction, it is unclear whether some jurors might have found that appellant had sexual contact with the victim in the office, while others might have premised their verdict on a finding that appellant had sexual contact with the victim in the food room or small room. Accordingly, the trial court's general unanimity instruction was insufficient to ensure that the individual jurors did not "pick and choose" evidence from the various distinct incidents to satisfy the elements of the charges.
 {¶ 35} Furthermore, this Court finds that the trial court's instruction that "[t]he charges set forth in each count in the indictment constitute a separate and distinct matter" merely distinguished between the counts of sexual imposition, in which the jury must find offensive sexual contact, and gross sexual imposition, in which the jury must find force. That instruction was also insufficient to ensure that the individual jurors reached a consensus that one specific incident satisfied all the elements of one charge, while another specific incident satisfied all the elements of the other charge. Accordingly, appellant's convictions may have been premised on piecemeal verdicts due to the insufficiency of the trial court's general unanimity instruction. Because this may have had an impact on the integrity of the judicial proceedings, this Court finds that the trial court erred by failing to instruct the jury in a more specific manner regarding its obligation to reach a unanimous verdict in regard to each count in the indictment.
 {¶ 36} This Court's plain error analysis, however, does not end here. Appellant maintains the burden of demonstrating that, but for the trial court's error, the outcome of the trial clearly would have been different. See Cunningham,105 Ohio St.3d at 207. In this case, this Court finds that appellant has not met that burden. Based on our analysis in regard to appellant's seventh assignment of error, this Court finds that the manifest weight of the evidence supports the conclusion that appellant's intentions and conduct in each of the three incidents fully supported his conviction on each of the charges. Accordingly, appellant has failed to demonstrate that the outcome of his trial would have been different but for the trial court's failure to give the jury a more particularized unanimity instruction. Appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II
"MR. GUENTHER WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL, TRIAL BY JURY AND DUE PROCESS OF LAW, WHEN THE STATE OF OHIO WAS ALLOWED TO IMPEACH HIS CREDIBILITY BY CROSS-EXAMINING HIM ABOUT THE NUMBER OF MEETINGS HE HAD WITH HIS DEFENSE COUNSEL."
 {¶ 37} Appellant argues that the trial court erred by admitting his testimony upon cross examination regarding the number of times appellant met with defense counsel. This Court disagrees.
 {¶ 38} The decision to admit or exclude evidence lies in the sound discretion of the trial court. State v. Sage (1987),31 Ohio St.3d 173, 180. This Court, therefore, reviews the trial court's decision regarding evidentiary matters under an abuse of discretion standard of review. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. An abuse of discretion demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio StateMed. Bd. (1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. Id.
 {¶ 39} Appellant argues that, by eliciting such evidence on cross, the State attempted to imply his guilt based on his decision to meet with defense counsel in advance of trial. In this case, however, appellant had previously questioned the victim and a State's witness during cross examination regarding any meetings with prosecutors prior to trial. The State argues that its purpose in questioning appellant in a similar manner was to diffuse appellant's implication that witnesses meet with counsel only to be coached in regard to their testimony. The State sought to demonstrate that it is not uncommon, and is in fact reasonable, for a witness to meet with counsel in advance of trial. Appellant testified as a witness in this case. In addition, the State neither referenced appellant's meetings with counsel at any other time during trial, nor inquired regarding the substantive nature of the discussions at those meetings. Under the circumstances, the trial court did not abuse its discretion by admitting appellant's testimony upon cross examination regarding the fact that he met with counsel prior to trial. Appellant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III
"MR. GUENTHER WAS DENIED DUE PROCESS OF LAW WHEN THE STATE OF OHIO WAS ALLOWED TO INTRODUCE EVIDENCE OF ALLEGED OTHER ACTS OF SEXUAL IMPOSITION INVOLVING A PERSON OTHER THAN THE ALLEGED VICTIM."
 {¶ 40} Appellant argues that the trial court erred by admitting other acts testimony by Candy Michelle Wilson. This Court disagrees.
 {¶ 41} On October 28, 2004, the State filed its notice of intent to use other acts evidence pursuant to Evid.R. 404(B) and R.C. 2945.59. Although appellant did not request a hearing or file a response in opposition to the notice, the trial court heard appellant's arguments opposing the admission of Ms. Wilson's testimony in chambers prior to trial.
 {¶ 42} As discussed in regard to the second assignment of error, this Court will not reverse the trial court's decision to admit or preclude evidence absent an abuse of discretion. Sage,31 Ohio St.3d at 180.
 {¶ 43} Evid.R. 404(B), which addresses other crimes, wrongs or acts, states:
"Evidence of the other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. In may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 44} R.C. 2945.59 states:
"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."
 {¶ 45} Ms. Wilson testified that, at the age of sixteen, she had to perform a few days of community service at the Sheffield Lake Community Center, where the victim had recently started working and appellant performed volunteer services. Ms. Wilson testified that appellant approached her shortly after she first arrived at the center to work. She testified that appellant sat beside her on a bench at the center and told her that it looked as though she were having a bad day. Ms. Wilson testified that appellant then placed his hand on her leg, rubbing and patting her, until his hand reached her private area. She testified that appellant commented that she had a "nice rack" as he touched her. Ms. Wilson testified that appellant's actions made her feel uncomfortable. She testified that appellant stopped when she gave him a look. Ms. Wilson testified that, although there were other people at the center, no one was in the immediate vicinity when appellant stroked her thigh and commented about her breasts. Finally, Ms. Wilson testified that appellant told her that he rubbed her to make her happy.
 {¶ 46} In the instant case, the victim testified that she was much younger than most of the other people working or volunteering at the center. She testified that, soon after she started working at the center, appellant began to repeatedly make comments to her about her breasts, stating that she had a "nice rack" or "nice tits." The victim testified that appellant touched her breasts after immobilizing her in the office doorway and in the small confines of the food room. She testified that appellant also touched her breast after positioning his chair next to hers in the small room. The victim testified that, except for the office incident, in which another male participated in the harassment and inappropriate comments, appellant touched her at times and places in which no other people might witness appellant's acts. In addition, the victim testified that appellant would wait until the victim's supervisor was out of the center on errands to approach and touch her inappropriately.
 {¶ 47} Ms. Wilson's testimony was admissible to prove appellant's motive, plan, scheme or opportunity to commit gross sexual imposition and sexual imposition against the victim in this case. Ms. Wilson's testimony was reasonably offered to prove appellant's motive to inappropriately touch a younger woman for the purpose of sexual gratification. Appellant's touchings of Ms. Wilson and the victim here were both accompanied by comments about the women's breasts. Ms. Wilson's testimony also served to prove appellant's plan and opportunity. Appellant chose newcomers to the center as his victims. The incidents involving Ms. Wilson and the victim occurred during the same time frame. In addition, appellant used a similar modus operandi in his sexual approach to both women. He positioned himself close to both women, preventing their easy escape, used similar phrases containing sexual innuendo, specifically "nice rack," and touched both women in a sexually inappropriate manner at times when there were no other people nearby to witness the touchings. Under the circumstances, this Court finds that the trial court did not abuse its discretion when it admitted Ms. Wilson's testimony regarding appellant's other acts to prove his motive, plan, scheme or opportunity to commit gross sexual imposition and sexual imposition against the victim in this case. Appellant's third assignment of error is overruled.
 ASSIGNMENT OF ERROR IV
"THE TRIAL COURT IMPROPERLY AMENDED THE CHARGES WHEN IT DOUBLED THE TIME SPAN DURING WHICH EACH OF THE ALLEGED OFFENSES WAS ALLEGEDLY COMMITTED, FROM DECEMBER, 2001 TO DECEMBER, 2001 AND JANUARY, 2002."
 {¶ 48} Appellant argues that the trial court erred when it granted the State's motion to amend the indictment to expand the time period in which appellant was alleged to have committed the offenses. This Court disagrees.
 {¶ 49} The State sought the amendment in chambers prior to trial. Although appellant asserted that he was unaware of any motion by the State to amend the indictment to expand the relevant time period, appellant failed to object to the amendment when it was made. Accordingly, appellant has waived any error except for plain error. Crim.R. 52(B).
 {¶ 50} Crim.R. 7(D) states, in relevant part:
"The court may at any time before, during, or after a trial amend the indictment * * * in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged."
"Crim.R. 7(D) embodies the protections guaranteed by Section10, Article I, of the Ohio Constitution, which guarantees the accused that the essential facts constituting the offense for which he is tried will be found in the indictment of the grand jury. Where one of the vital elements identifying the crime is omitted from the indictment, it is defective and cannot be cured by the court as such a procedure would permit the court to convict the accused on a charge essentially different from that found by the grand jury. An amendment that changes the name or identity of the offense charged constitutes reversible error, regardless of whether the defendant can show prejudice. For amendments that do not change the name or identity of the offense charged, the defendant is entitled to a continuance `unless it clearly appears from the whole of the proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made.'" (Internal citations omitted.) State v. Honeycutt (July 5, 2002), 2d Dist. No. 19004.
 {¶ 51} In this case, the indictment filed on March 7, 2002, alleged that appellant committed one count of sexual imposition "from December 1, 2001 through December 31, 2001," and one count of gross sexual imposition "from December 1, 2001 through December 31, 2001." On April 3, 2002, the State filed a bill of particulars, in which it asserted that appellant committed one count of sexual imposition "on or about December 1, 2001 through December 31, 2001," and one count of gross sexual imposition "from December 1, 2001 through December 31, 2001." On February 14, 2003, appellant filed his notice of alibi, in which he accounted for his whereabouts "during December 2001 and January 2002."
 {¶ 52} Appellant relies on a case out of the Eighth District for the proposition that the right to indictment "provides an inalienable protection to the defendant that he will be tried on the same essential facts on which the grand jury found probable cause." State v. Vitale (1994), 96 Ohio App.3d 695, 699. This Court finds Vitale distinguishable. In that case, the defendant had been charged with committing a theft offense on June 14, 1991. The indictment was subsequently amended to include the defendant's actions between June 14, 1991 and June 21, 1991. The defendant had brought his vehicle into a shop for repairs and picked it up on June 14, 1991 without paying, because an insurance company was to pay for the repairs. The insurance company ultimately sent the insurance payment to the defendant, who did not pass it along to the repair shop. On June 21, 1991, the defendant returned his vehicle to the repair shop with complaints about the work the shop had done. That same day, however, the defendant returned to the shop and took back his vehicle. On those facts, and at the conclusion of the State's case, the indictment was amended to reflect that the theft occurred "June 14, 1991 through June 21, 1991 inclusive."Vitale, 96 Ohio App.3d at 698. The Vitale court held that the amendment changed the identity of the crime, because the indictment was amended to add a separate crime which occurred at a different time and place. Id. at 700-01.
 {¶ 53} In this case, the amended indictment did not change the name or identity of the crimes charged, or charge any separate crime. In addition, the bill of particulars in this case put appellant on notice that the State would be including incidents occurring "on or about" December 1, 2001 through December 31, 2001, at least in regard to the sexual imposition charge. Accordingly, appellant could reasonably anticipate that he would have to defend beyond the strict parameters of those two dates. Further, appellant's notice of alibi indicates that he clearly understood that his defense would encompass the period of time between December 1, 2001 and January 31, 2002.[1]
Finally, the State asserts, and appellant does not dispute, that the discovery in this matter encompassed incidents between December 1, 2001 and January 31, 2002. Appellant did not move for a continuance of trial upon the granting of the amendment. Instead, appellant presented evidence to attempt to prove that none of the alleged incidents occurred at any time.
 {¶ 54} Under these circumstances, appellant has not demonstrated that the amendment to the indictment created a manifest miscarriage of justice or that the outcome of the trial could have been different but for the alleged error. Accordingly, the trial court did not err by allowing the State to amend the indictment to expand the period of time in which the incidents underlying the crimes occurred. Appellant's fourth assignment of error is overruled.
 ASSIGNMENT OF ERROR V
"MR. GUENTHER WAS DENIED HIS RIGHT TO TRIAL AND TO DUE PROCESS, GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS, WHEN THE PROSECUTOR ENGAGED IN IMPROPER ARGUMENT."
 {¶ 55} Appellant argues that the State's improper comments during opening statement and closing argument unfairly deprived appellant of a fair trial. This Court disagrees.
 {¶ 56} When considering whether certain remarks constitute prosecutorial misconduct, a reviewing court must determine "(1) whether the remarks were improper and (2) if so, whether the remarks prejudicially affected the accused's substantial rights."State v. Jackson, 107 Ohio St.3d 300, 2006-Ohio-1, at ¶ 142, citing State v. Smith (1984), 14 Ohio St.3d 13, 14. The Ohio Supreme Court continued that
"[t]he touchstone of analysis `is the fairness of the trial, not the culpability of the prosecutor.' This court will not deem a trial unfair if, in the context of the entire trial, it appears beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments." (Internal citations omitted.) Jackson at ¶ 142.
 {¶ 57} Appellant first complains that the State attacked defense counsel's integrity by commenting that counsel had used an "old defense attorney's trick" to mislead the jury, and that it was the State who had the duty to seek justice, while it was defense counsel's duty merely to defend his client. This Court agrees with the State that appellant takes the State's comments out of context.
 {¶ 58} During trial, defense counsel wrote selective pieces of witness testimony on a dry erase board during his cross examination. The State attempted to erase defense counsel's selective notes, which were not evidence. Defense counsel commented to the jury during his closing argument that the State tried to erase his notes because the State "didn't want anything that might sink into your heads and lead you to acquit [appellant] to be visible to you." In response, the State argued that it is an old defense attorney's trick to "try to leave words taken out of context in front of you in the hope that you will read them over and over again, and that those are the only things that will stick in mind, because they sat there longer." Although the State's use of the phrase "old defense attorney's trick" may have been impertinent, this Court does not find that the State engaged in prejudicial misconduct when it, in essence, merely informed the jury that defense counsel was using a tactic to broadcast non-evidence to the jury in support of appellant's defense.
 {¶ 59} This Court further finds that the State's comment that it is one of the State's duties is to seek justice was not improper. Appellant presented evidence in an attempt to prove that the State had not properly prepared its case, because the State failed to present the testimony of any police officers and because investigators failed to immediately seek appellant's version of the incidents. In response, the State's comment served to argue against such allegations of improper investigation and prosecution by asserting that State's duty is to seek justice, whether that corresponds with a conviction or not, i.e., the State's other duty to represent the people.
 {¶ 60} Appellant next complains that certain of the State's comments intimated that appellant had committed more crimes than those charged. Specifically, appellant complains about the State's comment that the charges could be supported by any number of the touchings that occurred in the three incidents, about the other acts testimony of Candy Michelle Wilson, and about the State's comment that "he's gotten away with this forever."
 {¶ 61} This Court finds no impropriety in the State's assertion that the evidence could support multiple counts of the same offense. That the State did not charge appellant with more than one count each of sexual imposition and gross sexual imposition lies within the bounds of prosecutorial discretion. "The prosecutor has great discretion in deciding which charges should be filed and may decide, for a myriad of reasons, not to prosecute on certain charges notwithstanding that sufficient evidence exists to support a conviction." State ex rel. Tiptonv. Schisler (Sept. 24, 1991), 4th Dist. No. 90CA1926. Appellant has failed to show how such a remark may have prejudiced any of his substantial rights.
 {¶ 62} This Court has already discussed the other acts testimony by Candy Michelle Wilson and found it admissible pursuant to Evid.R. 404(B) and R.C. 2945.59 as evidence of appellant's motive, plan or scheme, or opportunity. Accordingly, the State's comments about Ms. Wilson's testimony were not improper.
 {¶ 63} Finally, appellant misconstrues the State's alleged comments that appellant "had been getting away with these crimes forever." A witness for the defense had testified that appellant told off-color jokes at the community center and gave hugs and backrubs to women there on a regular basis and that these things constituted "Warren being Warren." In response to that testimony, the State argued in closing, "Let me tell you, Warren being Warren is not a defense, because sometimes Warren being Warren is Warren being a criminal. You can't just say, well, he's gotten away with this forever, let's just overlook it. That's wrong." Within its proper context, the State's comment was not improper, nor did it prejudice any of appellant's substantial rights. Rather, the comment served to remind that what one person might find inoffensive may very well rise to the level of criminal behavior where it offends another.
 {¶ 64} Third, appellant complains that the State engaged in misconduct when it portrayed appellant as arrogant, wealthy and powerful. The victim testified that she called appellant a "sick bastard" after an incident. The victim testified that appellant responded that he was a "rich sick bastard." The victim's supervisor testified that she was afraid to confront appellant about the victim's allegations, because she was afraid of appellant, because appellant had emphasized his wealth and personal contacts in the community. Appellant, himself, testified regarding his service in Vietnam and various contacts he had in the community. Under the circumstances, this Court does not find it improper that the State reiterated such testimony in its closing argument. Further, appellant has failed to demonstrate how such comments may have prejudiced any of his substantial rights.
 {¶ 65} Appellant's fifth assignment of error is overruled.
 ASSIGNMENT OF ERROR VI
"MR[.] GUENTHER WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 66} Appellant argues that his conviction should be reversed because he was denied the effective assistance of counsel. This Court disagrees.
 {¶ 67} This Court uses a two-step process as set forth inStrickland v. Washington (1984), 466 U.S. 668, 687, to determine whether a defendant's right to the effective assistance of counsel has been violated.
"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id.
 {¶ 68} To demonstrate prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691.
 {¶ 69} This Court must analyze the "reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland,466 U.S. at 690. The defendant must first identify the acts or omissions of his attorney that he claims were not the result of reasonable professional judgment. This Court must then decide whether counsel's conduct fell outside the range of professional competence. Id. There is a strong presumption that licensed attorneys in Ohio are competent. State v. Smith (1985),17 Ohio St.3d 98, 100.
 {¶ 70} Appellant first complains that trial counsel was ineffective for failing to object to a general unanimity instruction. This Court has already determined that the trial court's error in failing to give a specific unanimity instruction did not constitute plain error. Accordingly, appellant cannot demonstrate prejudice in regard to counsel's failure to demand a specific unanimity instruction.
 {¶ 71} Appellant next complains that trial counsel was ineffective for failing to object to the admission of Ms. Wilson's other acts testimony or to request a pretrial hearing on the matter. In fact, trial counsel did object and the trial court held a pretrial hearing on the matter. This Court has already determined that the trial court did not err in allowing Ms. Wilson's testimony regarding appellant's inappropriate touching of her pursuant to Evid.R. 404(B) and R.C. 2945.59. Accordingly, appellant cannot demonstrate prejudice in regard to counsel's failure to object to the admission of such testimony.
 {¶ 72} Appellant next complains that trial counsel was ineffective for failing to vigorously object to the amendment of the indictment. This Court has already determined that the trial court did not err in allowing the amendment to the indictment to expand the relevant time period. Accordingly, appellant cannot demonstrate prejudice in regard to counsel's failure to object to the amendment.
 {¶ 73} Appellant next complains that trial counsel was ineffective for failing to object to improper comments by the State during opening statement and closing argument. This Court has already determined that the State's comments were either not improper, or that no prejudice resulted from the comments. Accordingly, appellant cannot demonstrate prejudice in regard to counsel's failure to object to such statements.
 {¶ 74} Appellant next complains that trial counsel was ineffective for failing to object to the introduction of evidence regarding appellant's arrogance, personal wealth and community stature. "[T]his Court has consistently held that `trial counsel's failure to make objections is within the realm of trial tactics and does not establish ineffective assistance of counsel.'" State v. Bradford, 9th Dist. No. 22441,2005-Ohio-5804, at ¶ 27, quoting State v. Taylor, 9th Dist. No. 01CA007945, 2002-Ohio-6992, at ¶ 76. In this case, this Court considers trial counsel's failure to object as a tactical decision. Further, appellant has not demonstrated that such failure to object was not sound trial strategy, especially where, as here, appellant himself testified about his community contacts and Vietnam and community service on direct in his case-in-chief.
 {¶ 75} Finally, appellant complains that trial counsel was ineffective, because he had to be instructed by the court as to how he might examine a witness concerning a prior statement. Notwithstanding the corrections by the court, trial counsel engaged in lengthy cross examination of various State's witnesses regarding their prior statements. In fact, trial counsel was able to read into the record large portions of prior statements in his attempts to demonstrate inconsistencies. Accordingly, appellant cannot demonstrate prejudice in regard to trial counsel's approach to impeaching witnesses.
 {¶ 76} In addition, this Court finds that the cumulative effect of appellant's failure to object on various occasions and modify his own impeachment procedures do not combine to demonstrate the ineffective assistance of counsel. Trial counsel vigorously cross examined the State's witnesses and presented seven witnesses in appellant's defense. In addition, the record is replete with instances, where trial counsel objected on behalf of appellant. Accordingly, appellant cannot demonstrate prejudice as a result of the cumulative effect of trial counsel's representation.
 {¶ 77} Appellant's sixth assignment of error is overruled.
 III. {¶ 78} Appellant's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
Exceptions.
Whitmore, P.J. Moore, J. concur.
[1] Appellant asserted in his notice of alibi "that at the time of the alleged incidents as testified to by the alleged victim, * * * the Defendant was not present at the Civic Center as a volunteer during December 2001 and January 2002, at any time past 12:00 P.M. (noon), excluding January 18, 2002, when the Defendant was at the Civic Center from 2:00 P.M. until approximately 2:15 P.M."