DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Mildred Worthy, appeals the decision of the Akron Municipal Court, which found her guilty of violating a protection order. This Court affirms.
 I. {¶ 2} The appellant, Ms. Worthy, and Ms. Nadene Peake were both dating the same man, Larry Pollard, in January of 2007. This led to the women obtaining mutual restraining orders.
 {¶ 3} On March 22, 2007, both women ended up at the Kentucky Fried Chicken restaurant located on Wooster Avenue in Akron, Ohio. As a result of the *Page 2 
encounter, both women phoned the police to make a report. Ms. Worthy waited for the police at Rally's and Ms. Peake waited for the police at Burger King. The police first went to Rally's and asked Ms. Worthy to follow them to Burger King. After listening to each woman's version of what had happened earlier in the evening, the police decided to arrest Ms. Worthy.
 {¶ 4} Ms. Worthy was charged with one count of violating a protection order, a violation of R.C. 2919.27. Ms. Worthy pled not guilty, and the matter proceeded to trial. At the conclusion of the trial, the jury found Ms. Worthy guilty of violation of a protection order. The trial court sentenced Ms. Worthy to a total of one hundred eighty days in the Summit County Jail. The court suspended ninety days of Ms. Worthy's sentence on the condition that she have no further contact with Ms. Peake and obey all laws for one year. Ms. Worthy was also ordered to pay a fine of two hundred fifty dollars, plus court costs.
 {¶ 5} Ms. Worthy timely appealed her conviction, setting forth two assignments of error.
 II. ASSIGNMENT OF ERROR I "DEFENDANT-APPELLANT'S CONVICTION OF VIOLATING A PROTECTION ORDER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 6} In her first assignment of error, Ms. Worthy argues that her conviction is against the manifest weight of the evidence. This Court disagrees. *Page 3 
 {¶ 7} In determining whether a conviction is against the manifest weight of the evidence an appellate court:
 "[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 8} A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. State v. Thompkins (1997), 78 Ohio St.3d 380, 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v.Martin (1983), 20 Ohio App.3d 172, 175; see, also, Otten,33 Ohio App.3d at 340.
 {¶ 9} Ms. Worthy was charged with violating R.C. 2919.27, which provides, in relevant part:
 "(A) No person shall recklessly violate the terms of any of the following:
 "(1) A protection order issued or consent agreement approved pursuant to section 2919.26 or 3113.31 of the Revised Code;
 "(2) A protection order issued pursuant to section 2903.213 or 2903.214 of the Revised Code; *Page 4 
 "(3) A protection order issued by a court of another state."
 "Recklessly" is defined in R.C. 2901.22(C) as:
 "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."
 {¶ 10} The State called Ms. Peake to testify at trial. Ms. Peake testified regarding various events that led to her obtaining a civil protection order against Ms. Worthy. With regard to the incident on March 22, 2007, Ms. Peake testified to the following. Ms. Peake left her attorney's office in Canton, Ohio and stopped at Marshalls Department Store on the strip around 6:20 p.m. She then went straight to the Kentucky Fried Chicken restaurant ("KFC") located on Wooster Avenue to pick up something to eat before going home. The time printed on the receipt from KFC was 6:53 p.m.
 {¶ 11} Ms. Peake was talking to her cousin, Joanne Neal, on her cell phone as she pulled into KFC's drive-thru lane and placed her order. After placing her order, Ms. Peake drove up to the window to pay and pick up her food. While waiting at the drive-thru window, Ms. Peake observed a dark grey car pulling up quickly behind her through her rearview mirror. Ms. Worthy stuck her head out the window of her vehicle and yelled at Ms. Peake stating: "You know I'm going to kick your ass, don't you? * * * You know I'm gone kick your ass." Ms. Peake told the KFC employee who waited on her that the person in the car was harassing *Page 5 
her and that she was calling the police. Ms. Peake called the police and went to a nearby Burger King to wait for the police. When the police arrived, Ms. Peake told her version of what had occurred before she called 9-1-1. When given the option, Ms. Peake told the police that she wanted to press charges.
 {¶ 12} Officer Brian Boss of the Akron Police Department also testified on behalf of the State. Officer Boss stated that he and his partner were dispatched to respond to the calls made by Ms. Worthy and Ms. Peake. He testified that he and his partner first went to the Rally's restaurant where they met Ms. Worthy. He stated that he asked Ms. Worthy to follow them to the Burger King where Ms. Peake was waiting so they could figure out what was going on. Officer Boss testified that upon arriving at Burger King, he exited his cruiser and went over to Ms. Peake's vehicle. Officer Boss testified that Ms. Peake's hands were shaking and that she was crying. Officer Boss stated that he listened to both Ms. Worthy's and Ms. Peake's versions of what transpired before the police were called, then decided to place Ms. Worthy under arrest for violating the protection order issued to Ms. Peake.
 {¶ 13} Ms. Worthy also testified at trial. Ms. Worthy's testimony began with the incidents that led to her obtaining a civil protection order against Ms. Peake. With regards to the confrontation between her and Ms. Peake on March 22, 2007, Ms. Worthy testified as follows. Ms. Worthy went to the JC Penney outlet on Romig Road in Akron. After leaving JC Penney, Ms. Worthy stopped at *Page 6 
Arby's to pick up a sandwich for her daughter then to KFC to pick up something for herself While at the intercom ordering her food, Ms. Worthy noticed that the person in the truck in front of her was watching her through their rearview mirror. The truck pulled out of the parking lot and Ms. Worthy proceeded to the window to pay for and pick up her food. At her daughter's urging, Ms. Worthy drove to the Rally's parking lot and called the police. After the police arrived, they asked Ms. Worthy to follow them to Burger King. When they got to Burger King, Ms. Worthy told the police her side of the story and she was placed under arrest.
 {¶ 14} Ms. Worthy argues that the jury lost its way in finding that she acted "recklessly" on March 22, 2007, when the two women ended up at KFC at the same time. Although there was conflicting testimony presented at trial by Ms. Worthy and Ms. Peake as to the events leading up to and including the incident on March 22, 2007, this Court has long held that it will not reverse a conviction as against the manifest weight of the evidence simply because the finder of fact believed one version of events over another. State v. Yarbour, 9th Dist. No. 04CA0008-M,2004-Ohio-5444, at ¶ 29, citing State v. Hall (Sept. 20, 2000), 9th Dist. No. 19940. Based on the foregoing, this Court concludes that Ms. Worthy's conviction was not against the manifest weight of the evidence. Accordingly, her first assignment of error is overruled.
 ASSIGNMENT OF ERROR II *Page 7 "DEFENDANT'S TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION."
 {¶ 15} In her second assignment of error, Ms. Worthy argues that she received ineffective assistance counsel. Specifically, she argues that her trial counsel erred by failing to object to the admission of hearsay testimony and in not moving for judgment of acquittal pursuant to Crim.R. 29. This Court disagrees.
 {¶ 16} In evaluating an ineffective assistance of counsel claim, this Court employs the two-step process as described in Strickland v.Washington (1984), 466 U.S. 668, 687. First, the Court must determine whether there was a "substantial violation of any of defense counsel's essential duties to his client." State v. Bradley (1989),42 Ohio St.3d 136, 141; State v. Lytle (1976), 48 Ohio St.2d 391, 396, vacated in part on other grounds. Second, the Court must determine if prejudice resulted to the defendant from counsel's ineffectiveness. Bradley,42 Ohio St.3d at 141-142, citing Lytle, 48 Ohio St.2d at 396-397. Prejudice exists where there is a reasonable probability that the trial result would have been different but for the alleged deficiencies of counsel.Bradley, 42 Ohio St.3d at paragraph three of the syllabus. Defendant bears the burden of proof, and must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." State v. Colon, 9th Dist. No. 20949, 2002-Ohio-3985, at ¶ 48, quoting Strickland, 446 U.S. at 687. *Page 8 
 {¶ 17} Ms. Worthy asserts that her trial counsel should have moved for an acquittal pursuant to Crim.R. 29 on the grounds that the State failed to present sufficient evidence to sustain a conviction for violation of a protective order. In resolving Ms. Worthy's first assignment of error, we concluded that her conviction for violation of a protective order was not against the weight of the evidence. As "a determination that [a] conviction is supported by the weight of the evidence [is] dispositive of the issue of sufficiency," we find that a motion for acquittal based on insufficient evidence would have been meritless. (Emphasis omitted). See State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462; see, also, State v. Murphy, 4th Dist. No. 03CA12, 2003-Ohio-4939, at ¶ 21. Accordingly, the failure of Ms. Worthy's trial counsel to move for acquittal pursuant to Crim.R. 29 did not constitute ineffective assistance of counsel.
 {¶ 18} Ms. Worthy contends that her trial counsel was also ineffective by failing to object to testimony by Ms. Peake and Ms. Joanne Neal, Ms. Worthy's cousin, because such testimony was inadmissible hearsay. Ms. Worthy challenges the portions of Ms. Peake's testimony concerning telephone calls from her neighbor and her former mother-in-law.
 {¶ 19} First, this Court notes that Ms. Worthy's trial counsel did in fact object to portions of Ms. Peake's testimony regarding a phone call she received from her neighbor. The trial court sustained the objection and the questioning ended. Ms. Peake's remaining testimony regarding the call she received from her *Page 9 
neighbor pertained to the events leading up to Ms. Peake's application for a civil protection order against Ms. Worthy. Ms. Worthy's trial counsel's decision not to object to the remaining portions of Ms. Peake's testimony regarding the call from her neighbor was a trial tactic. This Court has consistently held that "trial counsel's failure to make objections is within the realm of trial tactics and does not establish ineffective assistance of counsel." State v. Guenther, 9th Dist. No. 05CA008663, 2006-Ohio-767, at ¶ 74.
 {¶ 20} Ms. Peake also testified regarding a phone call she received from her former mother-in-law. Ms. Peake testified that her former mother-in-law called her out of concern for her well being because she and her pastor had received telephone calls from Ms. Worthy. However, Ms. Peake did not reference any specific statements from her former mother-in-law in her testimony. This Court finds that Ms. Worthy's trial counsel's decision not to object to Ms. Peake's testimony regarding the phone call from her former mother-in-law constitutes a trial tactic. Id.
 {¶ 21} Ms. Neal testified regarding the phone conversations she had with Ms. Peake on March 22, 2007. Ms. Neal told the court what happened from the time Ms. Peake left Canton that afternoon until the police arrived at the Burger King where Ms. Peake went to wait for them as it was told to her by Ms. Peake. The record reveals that Ms. Worthy's trial counsel also objected several times during Ms. Neal's testimony. Each objection was sustained by the trial court, and *Page 10 
questioning ceased. As for Ms. Worthy's trial counsel's failure to object to the remaining portions of Ms. Neal's testimony, the decision was again a trial tactic. Id.
 {¶ 22} After reviewing the record, this Court finds that Ms. Worthy has failed to show that her trial counsel's performance was deficient. Therefore, we do not reach the second prong of the Strickland test. Thus, Ms. Worth's ineffective assistance of counsel claim must fail.Colon at ¶ 48, citing Strickland, 466 U.S. at 687. Ms. Worthy's second assignment of error is overruled.
 III. {¶ 23} Ms. Worthy's two assignments of error are overruled. The decision of the Akron Municipal Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Akron Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of *Page 11 
Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
 SLABY, J. DICKINSON, J. CONCUR *Page 1