JOURNAL ENTRY AND OPINION
{¶ 1} The record before us demonstrates that defendant-appellant Gregory Robinson was indicted by the Cuyahoga County Grand Jury on the following charges: one count of rape with notice of prior conviction and repeat violent offender specifications; two counts of kidnapping, each with notice of prior conviction, repeat violent offender, sexual motivation, and sexually violent predator specifications; two counts of gross sexual imposition; and two counts of compelling prostitution, each with notice of prior conviction, sexually violent predator, sexual motivation and repeat violent offender specifications.
 {¶ 2} With the exception of the sexual motivation specifications (attendant to the compelling prostitution charges), the specifications were bifurcated from the jury trial on the underlying offenses and heard before the court in a separate proceeding.[1]
 {¶ 3} At trial, one of the victims, a twelve-year-old boy, testified that he lives with his ten-year old cousin who is the second victim, his aunt Laney and his grandfather. The twelve-year old victim recounted that on the date in question, appellant, a friend of the family, came to the family's residence to get a chair that belonged to him and which was being stored in the basement. Appellant also had a wet vac to clean up some water that had settled in the basement. The twelve-year old victim testified that he went into the basement with appellant and saw appellant urinate in the corner of the basement. Appellant asked the victim if he ever "jack[ed] off."
 {¶ 4} The twelve year-old victim testified that appellant then brought his hand to touch appellant's penis and when he tried to pull his hand back, appellant took it and placed it on appellant's penis and rubbed it. The victim described appellant's penis as "rubbery and jelly," and "hard," and testified that appellant made him rub it for about five minutes.
 {¶ 5} The twelve-year old victim testified that when his cousin, the ten-year old victim, came into the basement, appellant put his penis back in his pants and turned on the wet vac. When the ten-year old victim returned upstairs, appellant made the twelve-year old victim touch him again while the wet vac remained running. The twelve-year old victim recounted that during the encounter appellant pushed his head down and made him "suck [his penis] like a popsicle." The victim described that he tasted something sour and saw "clear syrupy stuff" come from appellant's penis, and that he wiped his mouth on his sleeve. When the ten-year old victim interrupted again, the twelve-year old victim told her what was happening. The twelve-year old victim stated that he also saw appellant grab his cousin's leg and private area and when she got away from appellant, they both ran upstairs. Before they ran upstairs, appellant told both victims not to tell anyone what happened and offered them each $25.
 {¶ 6} Appellant came upstairs with the money, and the twelve-year old victim grabbed kitchen knives for himself and his cousin because they thought appellant would hurt aunt Laney and they wanted to protect her. When appellant left the house, the twelve-year old victim locked the door, and called another aunt, Geretta Carr, and told her what had happened.
 {¶ 7} The ten-year old victim described going down into the basement three times. The first time, she did not see anything unusual. The second time she saw appellant urinating in the corner, and the third time she saw her cousin raising his head up from appellant's penis. The ten-year old victim recounted that she started to run upstairs to tell aunt Laney, but that appellant grabbed her leg and touched her thighs close to her private area. She further testified that appellant also wanted her to suck his penis. The ten-year old victim also testified that she and her cousin had knives out of fear of appellant hurting aunt Laney.
 {¶ 8} Carr testified that the twelve-year old victim was "very hysterical when he called," and told her that appellant made him do something that he is not supposed to do. Aunt Laney testified that she remembered hearing both victims run up the basement stairs after having been down there with appellant, and that they were both carrying knives. She described them as being excited and scared, and that they told her that appellant made the twelve-year old victim "mess with him." After aunt Laney spoke with Carr, she called 696-KIDS the following day.
 {¶ 9} Officer Jason Steckle, a detective in the Sex Crimes and Child Abuse Unit of the Cleveland Police Department, interviewed the victims, aunt Laney and Carr. He obtained a written statement from the twelve-year old victim and collected as evidence the shirt he was wearing at the time of the incident. Subsequent testing on the shirt did not detect semen on it.
 {¶ 10} At the conclusion of the State's case, the defense made a Crim. R. 29 motion for acquittal, which was granted as to the two kidnapping counts, but denied as to the remaining charges. The defense did not present any evidence on its behalf.
 {¶ 11} The jury found appellant guilty of rape with force of a victim less than thirteen years old, gross sexual imposition (relative to the twelve-year old victim), and two counts of compelling prostitution with sexual motivation specifications. The jury acquitted appellant of the second charge of gross sexual imposition (relative to the ten-year old victim).
 {¶ 12} The court found appellant guilty of the notice of prior conviction specification, and not guilty of the repeat violent offender specification, attendant to the rape charge; and guilty of the sexually violent predator and notice of prior conviction specifications, and not guilty of the repeat violent offender specifications, attendant to the two compelling prostitution charges.
 {¶ 13} Appellant was sentenced to a ten-year term: eight years on the rape count, and two years each on the gross sexual imposition and compelling prostitution charges, to be served concurrently to each other and consecutively to the sentence on the rape. Appellant was further labeled a sexual predator.
 {¶ 14} Appellant now appeals, claiming prosecutorial misconduct, ineffective assistance of counsel and that the trial court erred in finding him to be a sexually violent predator.
 {¶ 15} Initially, we note an error in this case that has not been assigned because the State did not appeal, but which we deem too fundamental to disregard. Thus, pursuant to App. R. 12, we will review appellant's sentence in this case. See, also, State v. Craft (1977),52 Ohio App.2d 1; State v. Eddington (1976), 52 Ohio App.2d 312.
 {¶ 16} R.C. 2907.02, which governs rape, provides as follows:
 {¶ 17} "* * * If the offender under division (A)(1)(b) [when the victim is under thirteen years of age] of this section purposely compels the victim to submit by force or threat of force or if the victim under division (A)(1)(b) of this section is less than ten years of age, whoever violates division (A)(1)(b) of this section shall be imprisoned for life."
 {¶ 18} Division (A)(1)(b) provides that, "[N]o person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person."
 {¶ 19} Here, appellant was found guilty of rape with force pursuant to R.C. 2907.02(A)(1)(b) (i.e., with a victim less than thirteen years of age). At sentencing, however, appellant's counsel informed the court that he believed appellant was not subject to a life sentence because there was no sexually violent offender specification attendant to the rape charge. When the assistant prosecuting attorney was questioned by the court as to whether he agreed with defense counsel, he responded as follows:
 {¶ 20} "MR. MAHONEY: Your Honor, the rape charge in count number one does not carry a sexually violent predator specification. It only had a notice of prior conviction, which does not affect sentencing. And it had two repeat violent offender specifications, alleging that the defendant previously had been convicted of kidnapping and rape back in 1984.
 {¶ 21} "It's my understanding that the defendant was found not guilty by the Court of the repeat violent offender specifications. So with that in mind, and if that's correct, the sentence for count one is 3 to 10 years, and mandatory minimum of 3 years. That's it. You choose between 3 and 10 years, using the Senate Bill II guidelines."
 {¶ 22} R.C. 2953.08(G)(2) governs an appellate court's authority when reviewing felony sentencing and provides that:
 {¶ 23} "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
 {¶ 24} "* * *
 {¶ 25} "(b) That the sentence is otherwise contrary to law."
 {¶ 26} The Supreme Court of Ohio recently addressed the issue of a reviewing court's course of action in an instance where a sentence was contrary to law, and held that "* * * where a sentence is void because it does not contain a statutorily mandated term, the proper remedy is * * * to resentence the defendant." State v. Jordan (2004), 104 Ohio St.3d 21, citing State v. Beasley (1984), 14 Ohio St.3d 74.
 {¶ 27} Because appellant was found guilty of rape with force of a victim under the age of thirteen, he should have been sentenced to a life term and the issue of the possibility of parole should have been addressed. Thus, pursuant to R.C. 2953.08(G), we vacate appellant's sentence as being contrary to law and remand the case for resentencing.
 {¶ 28} In his first assignment of error, appellant argues that his constitutional rights were denied based upon prosecutorial misconduct. In particular, appellant initially contends that the State had the duty to dismiss the indictment once it learned that there was no semen on the twelve-year old victim's shirt or, alternatively, resubmit that evidence to the grand jury.
 {¶ 29} "The standard of review regarding a claim of prosecutorial misconduct based upon failure to disclose evidence is whether the nondisclosure was material to the finding of guilt based upon the totality of the record, and whether there is a reasonable likelihood that the undisclosed material would have affected the guilty verdict." Statev. Frederick (Nov. 8, 1999), 12th Dist. Nos. CA98-10-094 and CA98-11-101 (citation omitted); see, also, State v. Johnston (1988), 39 Ohio St.3d 48,529 N.E.2d 898.
 {¶ 30} Even if the evidence is viewed as exculpatory, it has been held that the prosecution has no duty to disclose exculpatory evidence to a grand jury. U.S. v. Williams (1992), 504 U.S. 36, 37. See, also, U.S. v.Adamo (C.A.6, 1984), 742 F.2d 927, 937, certiorari denied (1985),469 U.S. 1193; State v. Ball (1991), 72 Ohio App.3d 549, 551.
 {¶ 31} Upon review, we do not find prosecutorial misconduct based upon the State's failure to dismiss the indictment or resubmit the case to the grand jury. There was no duty to disclose the evidence to the grand jury and, moreover, the evidence was disclosed to the petit jury, who, based on the totality of the evidence, did not find it to be material.
 {¶ 32} In appellant's second argument based upon prosecutorial misconduct, he contends that the State presented improper evidence to the grand jury. In particular, appellant argues that his prior 1984 rape conviction was improperly presented to the grand jury because it occurred some ten years prior to the enactment of R.C. 2971.01, which governs sexually violent predator specifications.
 {¶ 33} R.C. 2971.01(H)(1) defines a sexually violent predator as follows:
 {¶ 34} "* * * a person who has been convicted of or pleaded guilty to committing, on or after January 1, 1997, a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses." (Emphasis added.)
 {¶ 35} Because appellant's prior rape conviction was in 1984, well before 1997, it was improperly the basis of the prior conviction for the sexually violent predator specifications. Further, the Supreme Court of Ohio recently held that underlying sexually violent offenses in a case can not be used to support a sexually violent predator specification in that same case. State v. Smith, 104 Ohio St.3d 106, 2004-Ohio-6238. Thus, appellant's 1984 rape conviction was improperly used as the basis for the sexually violent predator specifications attendant to counts six and seven.
 {¶ 36} However, we are not persuaded by appellant's argument that he would not have been indicted on the underlying charges absent the prior rape conviction which was presented to the grand jury and, thus, do not find prosecutorial misconduct. Further, the sexually violent predator specifications were bifurcated from the underlying charges and, therefore, were considered by the trial court and not the petit jury. Moreover, although the trial court found appellant guilty of the sexually violent predator specifications, it did not sentence him on them and, hence, he was not prejudiced.
 {¶ 37} Thus, appellant's first assignment of error is affirmed in part and reversed and remanded in part, with instructions to the trial court to amend its journal entry to find appellant not guilty of the sexually violent predator specifications (counts six and seven).
 {¶ 38} In his second assignment of error, appellant contends that he received ineffective assistance of counsel. We disagree.
 {¶ 39} In order to demonstrate a claim of ineffective assistance of counsel, appellant must show that his counsel deprived him of a fair trial. Specifically, appellant must show that: 1) defense counsel's performance at trial was seriously flawed and deficient; and 2) the result of the trial would have been different if defense counsel had provided proper representation at trial. Strickland v. Washington (1984),466 U.S. 668; State v. Brooks (1986), 25 Ohio St.3d 144.
 {¶ 40} A presumption that a properly licensed attorney executes his or her duty in an ethical and competent manner must be applied to any evaluation of a claim of ineffective assistance of counsel. State v.Smith (1985), 17 Ohio St.3d 98; Vaughn v. Maxwell (1965), 2 Ohio St.2d 299. In addition, this court must accord deference to defense counsel's strategic choices during trial and cannot examine the strategic choices of counsel through hindsight. Strickland, supra, at 689. We will consider appellant's claims of ineffective assistance of counsel in turn.
 {¶ 41} Appellant first argues that his counsel was ineffective by not utilizing all of his allotted peremptory challenges, permitting to remain on the jury juror number five, who at one point during voir dire indicated she was not sure she could be impartial and handle the case, and juror number one, whose brother is a prosecuting attorney for the city of Cleveland.
 {¶ 42} In regard to juror number five, our review of the voir dire proceeding does not reveal that counsel was ineffective for not challenging her. After she, and other jurors, indicated some hesitancy about the case because of the nature of the charges, defense counsel adequately questioned the panel as a whole about their obligation to be fair and impartial and concluded by asking the panel if any of the questions he asked had raised further concerns. Juror number five did not indicate that she had any concerns. Moreover, the court specifically questioned juror number five, who indicated that she "[c]ould give this defendant his presumption of innocence in this case, listen to the evidence from the witness stand and apply the law that [the court] give[s] you and hold the State to its obligation of producing evidence beyond a reasonable doubt." As such, counsel was not ineffective by not challenging her.
 {¶ 43} In regard to juror number one, the record likewise demonstrates that counsel was not ineffective for not challenging him. Juror number one indicated that he did not really talk to his brother about his work and that he could set aside anything that he may have learned from his brother about the law and apply the law as instructed by the court. Thus, appellant has failed to demonstrate that his counsel was deficient by not removing juror number one and that the outcome of the trial would have been different had he been removed.
 {¶ 44} Appellant next claims that his counsel was deficient for failing to present witnesses on his behalf. Appellant does not offer what witnesses could have been presented and what their testimony would have been. Appellant has, therefore, failed to demonstrate that his counsel was deficient by not presenting a defense and that the outcome of the trial would have been different had he presented witnesses.
 {¶ 45} Appellant's next claim of ineffective assistance of counsel is based upon his counsel's alleged failure to object to the State's leading questions. The trial judge has discretion to allow leading questions on direct examination. Specifically, Evid. R. 611(C) provides that "leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony." Furthermore, the court exercises reasonable control over the mode of interrogation so that its presentation will effectively ascertain the truth. Evid. R. 611(A). Therefore, it is within the discretion of the trial court to permit the State to ask leading questions of its own witnesses. The alleged impermissible questioning cited by appellant is relative to questioning of the victims, a twelve-year old and a ten-year old. Ohio courts have held that a prosecutor is allowed to use leading questions on direct examination where the victim is of tender years. State v. Madden (1984),15 Ohio App.3d 130; State v. Holt (1969), 17 Ohio St.2d 81.
 {¶ 46} Upon review of the challenged testimony, we find that the State's questioning of the victims was necessary to develop their testimony, and that defense counsel was not ineffective by not objecting to it.
 {¶ 47} Appellant next claims that he received ineffective assistance of counsel based upon defense counsel's performance during closing argument. First, appellant challenges counsel's statement during closing argument that, "I could go step by step and show you all sorts of inconsistencies, and I'm sure [appellant] wants me to * * *[,]" and then counsel's failure to point out those inconsistencies to the jury. We do not find that defense counsel's strategy in that regard was ineffective. After pointing out that there were inconsistencies in the victims' testimony, defense counsel explained to the jury his reasoning for not addressing those inconsistencies: they were "minor inconsistencies and they're not germane to this issue. You can't expect the 10- or 11-year-old kid to get everything straight one by one by one."
 {¶ 48} Appellant also argues that his counsel "admitted that he has difficulty in cross-examining children." Appellant's argument is based on the following statement made by defense counsel during closing argument: "probably the most difficult thing for a lawyer in this case is cross-examining kids. And really it isn't this type of case, it's any case. How can you really cross-examine a 10- or 11-year-old kid about what happened when they have a limited vocabulary and really they can only tell you certain things? You have to ask them questions. Of course, as the prosecutor will tell you, it's natural for them to have some inconsistencies, but I think ultimately when you listen to everything, you will see that there were more than just natural inconsistencies." Put in context, we do not find that defense counsel's statement rendered him ineffective.
 {¶ 49} Appellant's final allegation of ineffective assistance of counsel is based upon defense counsel's failure to raise the need for reindictment based upon the lack of semen on the twelve-year old victim's shirt and based upon the improperly included specifications in the indictment. In regard to the lack of semen on the shirt, there was no duty to disclose that evidence to the grand jury and, moreover, the evidence was disclosed to the petit jury, who, based on the totality of the evidence, did not find it to be material. In regard to the improperly included specifications in the indictment, we are not persuaded by appellant's argument that he would not have been indicted on the underlying charges had it not been for the improper sexually violent specifications.
 {¶ 50} As such, appellant's second assignment of error is overruled.
 {¶ 51} In his third and final assignment of error, appellant contends that the trial court erred in finding him to be a sexually violent predator pursuant to R.C. 2971.01. For the reasons already discussed, we agree and reverse and remand this case to the trial court to amend its journal entry of conviction relative to the sexually violent predator specifications.
 {¶ 52} Additionally, we find, sua sponte, that the trial court's journal entry of conviction relative to the sexual motivation specifications (counts six and seven) should also be amended. R.C. 2971.01(K) defines a sexual motivation specification as "* * * a specification * * * that charges that a person charged with a designated homicide, assault, or kidnapping offense committed the offense with a sexual motivation." As appellant was not charged in counts six and seven with homicide, assault or kidnapping, the sexual motivation specifications were improper.
 {¶ 53} Thus, appellant's third assignment of error has merit, and we reverse and remand with instructions to the trial court to amend its journal entries to find appellant not guilty relative to the sexually violent predator and sexual motivation specifications.
 {¶ 54} The sentence is vacated and the case is remanded for resentencing. The conviction is affirmed in part, and reversed and remanded in part for correction of the journal entry finding appellant guilty of the sexually violent predator and sexual motivation specifications. It is, therefore, ordered that appellant and appellee share equally the costs herein.
It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Frank D. Celebrezze, Jr., J., Concurs.
 Ann Dyke, P.J., Concurs in Judgment Only.
[1] The trial court's July 15, 2004 journal entry incorrectly states that all the specifications were tried to the court.