JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, George Palmer ("Appellant"), appeals from his convictions for aggravated robbery and assault on a peace officer. For the reasons set forth below, we affirm.
 {¶ 2} On October 21, 2004, the Cuyahoga County Grand Jury indicted Appellant on one count of aggravated robbery, in violation of R.C. 2911.01, with a firearm specification, and one count of assault on a peace officer, in violation of R.C.2903.13. Appellant pled not guilty to the indictment.
 {¶ 3} Appellant's case proceeded to trial on March 9, 2005. At trial, the State presented the following four witnesses: Officer Robert Petrick ("Petrick"), Officer William Gall ("Gall"), Lieutenant Timothy Capretta ("Capretta") and Darren Kemp ("Kemp").
 {¶ 4} The following facts were introduced at the trial of this matter. On or about the night of August 23, 2004, Appellant was driving eastbound on McCracken Road in Garfield Heights, Ohio when Petrick saw Appellant steer his vehicle left of center, make an abrupt left turn without signaling first, and an abrupt right turn into a shopping plaza.
 {¶ 5} Appellant then pulled into a parking space outside the McCracken Food Mart and Petrick pulled his vehicle next to him. Appellant exited his vehicle and attempted to enter the store when Petrick stopped him to investigate his erratic driving. Petrick then directed Appellant back to his seat in his vehicle.
 {¶ 6} While speaking with him, Petrick noticed Appellant's speech was slurred and suspected that he was intoxicated. Petrick obtained Appellant's driver's license and ran a check on the license. It was then that Petrick discovered that there was a protection order against Appellant.
 {¶ 7} Petrick then witnessed Appellant stuff some pills into his mouth and throw the pill bottle at the passenger, Joei Andeits. Petrick then asked Andeits for her identification. While she was searching for her identification, Petrick learned that Appellant had taken Atavan pills for his nervousness. When Andeits supplied Petrick with her identification, Petrick discovered that she was in fact the person who had the protection order against Appellant. At this time, Petrick decided to call for assistance.
 {¶ 8} Shortly thereafter, Officer Gall arrived at the scene. While Gall spoke with Andeits, Petrick escorted Appellant from the vehicle to conduct field sobriety tests to determine whether he was driving under the influence of alcohol. Appellant failed these tests.
 {¶ 9} At this point, Petrick escorted Appellant toward his police cruiser so that he could arrest Appellant for driving under the influence as well as violating the protection order. Petrick opened his police cruiser's back door, told Appellant he was under arrest and to have a seat in the vehicle. He refused and backed away from Petrick. About four or five times, Petrick ordered Appellant to comply with his orders. Appellant refused each time. Petrick and Gall then sprayed Appellant with pepper spray.
 {¶ 10} After being pepper-sprayed, Appellant broke away from Petrick. With the officer running behind, Appellant sprinted towards Darren Kemp and his eleven-year-old son. Upon approaching Kemp, Appellant swung around toward Petrick and charged full force at the officer and tackled him to the ground. Petrick and Appellant struggled. Petrick testified that he could feel Appellant tugging on his firearm. Additionally, Petrick stated that he was unable to reach his firearm.
 {¶ 11} Kemp testified that he witnessed the entire scene and that he observed Appellant reaching for the officer's firearm. Additionally, Kemp stated that Appellant's hand hit the holster holding the firearm. Kemp further testified that Appellant was blocking Petrick in such a manner that Petrick was unable to reach his firearm. Concerned for his son's safety, the officer's safety and his own, Kemp intervened and jumped on Appellant.
 {¶ 12} Petrick and Gall testified that by the time Petrick, Gall and Kemp subdued Appellant, Petrick's firearm was no longer at his side and instead was in front of him pointing to the ground. As a result of the struggle, Petrick's pants were torn, his belt was scratched, and he suffered a bruise to his back, injury to his finger, and a sprained wrist. The officers then handcuffed Appellant and transported him to the station.
 {¶ 13} At the conclusion of the aforementioned testimony, the defense made a Crim.R. 29 motion, which the trial court denied. The defense then rested its case and the case proceeded to closing arguments.
 {¶ 14} On March 11, 2005, the jury found Appellant guilty of aggravated robbery and assault on a peace officer but found him not guilty of the firearm specification. The trial court sentenced Appellant to nine years in prison for count one and seventeen months for count two, to be served concurrently.
 {¶ 15} Appellant now appeals his convictions and submits three assignments of error for our review.
 {¶ 16} Appellant's first assignment of error states:
 {¶ 17} "The trial court erred in denying Appellant's motion for acquittal as to the charges when the state failed to present sufficient evidence against Appellant."
 {¶ 18} When reviewing a challenge to the sufficiency of the evidence, an appellate court must view the evidence in a light most favorable to the prosecution and determine if any rational trier of fact could have found the essential elements of the crime, proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph two of the syllabus, citing Jackson v. Virginia (1979), 443 U.S. 307,99 S.Ct. 2781, 61 L.Ed.2d 560. Thus, a reviewing court will not overturn a conviction for insufficiency of "the evidence unless we find that reasonable minds could not reach the conclusion reached by the trier of fact." State v. Treesh,90 Ohio St.3d 460, 484, 2001-Ohio-4, 739 N.E.2d 749.
 {¶ 19} Within this assignment of error, Appellant maintains that the State failed to present sufficient evidence to convict Appellant of aggravated robbery. More specifically, Appellant claims that the State failed to present reasonable or reliable evidence that Appellant attempted to gain control of Petrick's firearm. We disagree.
 {¶ 20} The State presented sufficient evidence that Appellant attempted to gain control of Petrick's firearm. First, Petrick testified that he felt Appellant pulling on his firearm. Petrick also stated that his holster had been damaged and that his pants were torn. He further testified that the firearm had been pulled to the front of his body — a fact that was confirmed by Gall. Additionally, Kemp, the bystander at the scene, testified that he observed Appellant grabbing for Petrick's firearm and reacted by jumping on Appellant in an effort to prevent his obtaining the firearm. Viewing this evidence in a light most favorable to the prosecution, we find that sufficient evidence existed to convict Appellant of aggravated robbery. Appellant's first assignment of error is without merit.
 {¶ 21} Appellant's second assignment of error states:
 {¶ 22} "Appellant's conviction is against the manifest weight of the evidence."
 {¶ 23} In State v. Thompkins, 78 Ohio St.3d 380, 388,1997-Ohio-52, 678 N.E.2d 541, the court illuminated its test for manifest weight of the evidence as follows:
 {¶ 24} "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.' It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief. Black's [Law Dictionary (6 Ed. 1990)], at 1594."
 {¶ 25} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id., citing Tibbs v. Florida (1982), 457 U.S. 31,45, 102 S.Ct. 2211, 72 L.Ed.2d 652. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See Statev. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Furthermore, the discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id.
 {¶ 26} In this matter, we cannot conclude that the jury lost its way. Within this assignment of error, Appellant challenges only his conviction for aggravated robbery and contends that the jury focused on bad character evidence of him and not on the evidence, or lack thereof, tying him to Petrick's firearm. As previously stated, the record demonstrates that ample evidence existed establishing that Appellant attempted to gain control of Petrick's firearm. Petrick testified that he felt Appellant tugging on his firearm and that his holster and pants were damaged as a result of the struggle. Kemp testified that he witnessed Appellant reaching for Petrick's firearm. Additionally, both Petrick and Gall testified that the firearm had been pulled from Petrick's right side to the center of his body. Accordingly, after reviewing the entire record, weighing the evidence and all reasonable inferences and considering the credibility of the witnesses, we cannot disagree with the jury's resolution finding Appellant guilty of aggravated robbery. Accordingly, Appellant's second assignment of error is without merit.
 {¶ 27} Appellant's third assignment of error states:
 {¶ 28} "Appellant was denied a fair trial due to prosecutorial misconduct during closing arguments in violation of his rights as guaranteed by Article I, Section 10 of the Ohio Constitution and the Fifth, Sixth, and Fourteenth Amendments of the U.S. Constitution."
 {¶ 29} In analyzing claims of prosecutorial misconduct, the test is "whether remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused." Statev. Jones, 90 Ohio St.3d 403, 420, 2000-Ohio-187, 739 N.E.2d 300, citing State v. Smith (1984), 14 Ohio St.3d 13, 14,470 N.E.2d 883. "The touchstone of analysis `is the fairness of the trial, not the culpability of the prosecutor.'" Id., quoting Smith v.Phillips (1982), 455 U.S. 209, 219, 102 S.Ct. 940, 947,71 L.Ed.2d 78. Where it is clear beyond a reasonable doubt that a jury would have found the defendant guilty even absent the alleged misconduct, the defendant has not been prejudiced, and his conviction will not be reversed. See State v. Loza,71 Ohio St.3d 61, 78, 1994-Ohio-409, 641 N.E.2d 1082. In reviewing allegations of prosecutorial misconduct, we review the alleged wrongful conduct in the context of the entire trial. Darden v.Wainwright (1986), 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144.
 {¶ 30} Generally, prosecutors are entitled to considerable latitude in closing argument. State v. Ballew,76 Ohio St.3d 244, 255, 1996-Ohio-81, 667 N.E.2d 369; State v. Stevens,
Montgomery App. No. 19572, 2003-Ohio-6249. In closing argument, a prosecutor may comment freely on "what the evidence has shown and what reasonable inferences may be drawn therefrom." State v.Lott (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293, quotingState v. Stephens (1970), 24 Ohio St.2d 76, 82, 263 N.E.2d 773. "Moreover, because isolated instances of prosecutorial misconduct are harmless, the closing argument must be viewed in its entirety to determine whether the defendant has been prejudiced."Ballew, supra; State v. Lorraine (1993), 66 Ohio St.3d 414,420, 613 N.E.2d 212.
 {¶ 31} Within this assignment of error, Appellant first challenges the prosecutor's remark during closing argument that defense counsel has "been doing this a lot longer than I have, and this is kind of a trick that defense attorneys use." Appellant further complained that the prosecutor remarked, "He's trying to bait me into going through all of these. And I think that I can. So I'm going to take the bait."
 {¶ 32} In State v. Guenther, Lorain App. No. 05CA008663,2006-Ohio-767, the Ninth District was confronted with similar comments made by a prosecutor. In that case, the prosecutor commented that the defense counsel was using "an old defense attorney's trick" in an effort to mislead the jury. The court held:
 {¶ 33} "Although the State's use of the phrase `old defense attorney's trick' may have been impertinent, this Court does not find that the State engaged in prejudicial misconduct when it, in essence, merely informed the jury that defense counsel was using a tactic to broadcast non-evidence to the jury in support of appellant's defense."
 {¶ 34} As in Guenther, we too find that the prosecutor merely informed the jury as to a trial strategy used by defense counsel to force the prosecutor to explain every alleged inconsistency in the testimony presented by the State. For this reason, we decline to find any prosecutorial misconduct that prejudiced Appellant in this instance.
 {¶ 35} Next, Appellant argues that the prosecutor falsely accused defense counsel of saying the officers committed "perjury." We conclude that defense counsel invited such a comment by the prosecution.
 {¶ 36} It is apparent in the record that, during closing argument, defense counsel accused the officers of fabricating their story. More specifically, defense counsel stated the following:
 {¶ 37} "I will submit to you it's always interesting to me how police officers who work on the force together, and apparently are friends since Officer Gall referred to Officer Petrick as Bob, and after six or seven months have passed, how their testimony is going to be consistent all the way down the line, and then a civilian, who isn't on the force and doesn't see these guys everyday has his version of what happened."
 {¶ 38} Additionally, defense counsel stated:
 {¶ 39} "And it could be that George Palmer ticked these cops off so bad that they decide that resisting arrest and DUI and assault on a police officer isn't enough for George? And let's really stick it to him." * * *
 {¶ 40} Defense counsel further stated:
 {¶ 41} "If we looked at this testimony of these police officers with a bit of a jaundiced eye and think that maybe, since their stories were so consistent, maybe they had a different reason for charging Mr. Palmer."
 {¶ 42} Under these circumstances, the prosecutor's comments were responses fairly invited by the defense strategy. Cf. Statev. Mason, 82 Ohio St.3d 144, 162-163, 1998-Ohio-370,694 N.E.2d 932. In light of the foregoing, we find that the prosecutor did not commit prosecutorial misconduct. Appellant's third assignment of error is without merit.
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Cooney, J., and McMonagle, J., concur.