DECISION AND JOURNAL ENTRY
 INTRODUCTION {¶ 1} While 11-year-old K.S. was sleeping over at her friend's house, Richard Emerick lay down beside her and began touching her private areas over her clothing. He later moved on top of her and simulated sex by rubbing himself against her. A jury convicted him of abduction, but could not reach a verdict regarding gross sexual imposition. After a bench retrial, the trial court convicted him of gross sexual imposition. This Court affirms because there was sufficient evidence to convict Mr. Emerick of abduction, because his conviction for gross sexual imposition was not against the manifest weight of the evidence, and because his lawyer for the first trial was not ineffective.
 FACTS {¶ 2} On the evening of August 17, 2005, K.S. played outside with a friend, whose grandparents lived on the same street as she did. When it got dark, the friend's mother invited *Page 2 
K.S. to sleep over at the grandparents' house. The grandparents were out of town at the time, but their son, Mr. Emerick, was also at the house. K.S., her friend, and her friend's mother spent the remainder of the evening watching cartoons in the grandparents' bedroom. At some point, K.S. went to the kitchen to get some water. When she returned to the bedroom, her friend and her friend's mother were sprawled out on the bed falling asleep. Because there was no more room on the bed, K.S. suggested that she sleep on the living room floor. The friend's mother agreed.
 {¶ 3} K.S. gathered some blankets and went out to the living room. The television was on, and Mr. Emerick was sitting in a rocking chair in the corner using a laptop computer. K.S. changed the channel to a cartoon, spread a blanket on the floor, and lay down. A few minutes later, Mr. Emerick got up from the rocking chair and lay down next to her. According to K.S., he began touching her breasts and vagina over her clothing. After a little while, K.S. got up and went to the bathroom. When she returned, she lay back down on the blanket. Mr. Emerick then placed one of his legs over K.S., moved on top of her, and began rubbing his body against hers. K.S. thought he was trying to have sex with her. She tried to squeeze out from under Mr. Emerick, but he was too heavy. K.S. eventually told Mr. Emerick that she needed to use the bathroom again and he got off of her. When K.S. returned, Mr. Emerick went upstairs to bed and K.S. went to sleep on the living room floor.
 {¶ 4} In the morning, K.S. told her friend's mother what had happened. She later told her parents and a police detective about the events. When a police detective asked Mr. Emerick about what had happened, he admitted that he was on the floor with K.S. for 20 to 30 minutes, but denied touching her. The police seized the laptop computer, but did not find any illegal images on it. The police later seized Mr. Emerick's desktop computer and found over 1000 *Page 3 
pornographic pictures on it, 21 or 22 of which may have involved children. At least one of the pictures appeared to depict a 10-to 14-year-old girl engaged in a sex act.
 {¶ 5} The Grand Jury indicted Mr. Emerick for gross sexual imposition, abduction, pandering obscenity involving a minor, pandering sexually oriented matter involving a minor, and illegal use of a minor in nudity-oriented material or performance. A jury found Mr. Emerick guilty of abduction and found him not guilty of the pandering and illegal use of a minor charges. It was hung regarding the gross sexual imposition charge. When Mr. Emerick was retried on the gross sexual imposition charge, he waived his right to a jury trial. The trial court found him guilty of gross sexual imposition and sentenced him to consecutive four-year sentences. Mr. Emerick has appealed, assigning three errors.
 ABDUCTION {¶ 6} Mr. Emerick's first assignment of error is that the trial court incorrectly denied his motion for acquittal on the abduction charge because his conviction on that charge was not supported by sufficient evidence. Under Rule 29(A) of the Ohio Rules of Criminal Procedure, a defendant is entitled to acquittal on a charge against him "if the evidence is insufficient to sustain a conviction. . . ." Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo. State v. Thompkins, 78 Ohio St. 3d 380, 386
(1997); State v. West, 9th Dist. No. 04CA008554, 2005-Ohio-990, at ¶ 33. This Court must determine whether, viewing the evidence in a light most favorable to the prosecution, it would have convinced an average juror of Mr. Emerick's guilt beyond a reasonable doubt. State v.Jenks, 61 Ohio St. 3d 259, paragraph two of the syllabus (1991).
 {¶ 7} Mr. Emerick was convicted of violating Section 2905.02(A)(2) of the Ohio Revised Code. That section provides that "[n]o person, without privilege to do so, shall *Page 4 
knowingly . . . [b]y force or threat, restrain the liberty of another person under circumstances that create a risk of physical harm to the victim or place the other person in fear." R.C. 2905.02(A)(2). Mr. Emerick has argued that there was insufficient evidence to prove he knowingly restrained K.S. by "force or threat."
 {¶ 8} Section 2901.01(A)(1) defines force as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901(A)(1). K.S. testified that, when she returned from the bathroom, Mr. Emerick "put one leg on each side of [her]." She testified that she could not get away because Mr. Emerick "was laying on top of [her]." Viewing her testimony in a light most favorable to the prosecution, it was sufficient to establish that Mr. Emerick had physically restrained K.S. His first assignment of error is overruled.
 GROSS SEXUAL IMPOSITION {¶ 9} Mr. Emerick's second assignment of error is that his conviction for gross sexual imposition was against the manifest weight of the evidence. When a defendant argues that his conviction is against the manifest weight of the evidence, this Court "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten, 33 Ohio App. 3d 339, 340
(1986).
 {¶ 10} Section 2907.05(A) of the Ohio Revised Code provides that "[n]o person shall have sexual contact with another . . . when . . . (4) [t]he other person . . . is less than thirteen years of age. . . ." R.C. 2907.05(A)(4). Mr. Emerick has argued that K.S. was the only witness who testified about his alleged actions, that her testimony at the second trial was "riddled with *Page 5 
inconsistencies," and that, reviewing her testimony from both trials, she contradicted herself many times.
 {¶ 11} Although K.S. was the only witness regarding the alleged sexual contact, a police detective testified that Mr. Emerick admitted that "he was on the floor with [K.S.] from anywhere between 20 and 30 minutes." Regarding K.S.'s testimony at the second trial, Mr. Emerick has argued that she was inconsistent about her reason for sleeping in the living room, the alleged touching, and whether he had used force to hold her down. He has argued that K.S.'s purported reason for sleeping in the living room was "dubious" and has noted that the police detective did not corroborate her testimony on that point. Mr. Emerick has not identified any place in the record, however, at which K.S. contradicted her statement that she had to sleep in the living room because her friend and friend's mother were spread out on the bed in the grandparents' bedroom. Her testimony on that issue at the second trial was consistent with her testimony on that issue from the first trial.
 {¶ 12} "On the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass,10 Ohio St. 2d 230, paragraph one of the syllabus (1967). Mr. Emerick has noted that K.S. testified that she had trouble settling down that night, that she had been running back and forth between the kitchen and the bedroom, that she had known Mr. Emerick for a few years, that they had a playful relationship, and that they had wrestled in the past. He has failed to indicate, however, how any of those statements conflicted with her testimony about what happened when she lay down in the living room. Mr. Emerick has also noted that K.S. was able to get away from Mr. Emerick, that she remained in the living room all night, that she did not scream, and that she did not wake up her friend's mother to tell her what had happened. K.S., however, was not asked *Page 6 
about why she did not scream or about why she waited until the morning to tell her friend's mother. Considering that it was late at night, that her friend's mother was asleep, and that Mr. Emerick went upstairs to bed after K.S. returned from the bathroom a second time, there was nothing about K.S.'s inaction that undermined her credibility.
 {¶ 13} Regarding whether K.S.'s testimony was consistent between the two trials, because Mr. Emerick has not identified any specific inconsistencies or their location in the record, this Court may disregard his argument. See App. R. 12(A)(2). Nevertheless, this Court has reviewed K.S.'s testimony from both trials and has noted one difference. At the first trial, K.S. testified that, when she entered the living room to go to sleep, the television was on and she used the remote control to change the channel to a cartoon. At the second trial, K.S. testified that, when she entered the living room, the television was not on, but Mr. Emerick turned it on while she was in the bathroom the first time. A different judge presided over the bench trial, but Mr. Emerick did not impeach K.S. with her prior testimony about whether the television was on when she entered the living room. Accordingly, even if K.S.'s inconsistency on that issue would have undermined her credibility, Mr. Emerick forfeited that opportunity.
 {¶ 14} Having reviewed and weighed the evidence that was before the trial court at the second trial, this Court cannot say that the trial court lost its way and created a manifest miscarriage of justice by believing K.S.'s testimony. Mr. Emerick's second assignment of error is overruled.
 INEFFECTIVE ASSISTANCE OF COUNSEL {¶ 15} Mr. Emerick's third assignment of error is that he was not afforded effective assistance of trial counsel at his first trial. He has argued that his lawyer for that trial should have filed a motion to suppress certain evidence, failed to cross-examine one of the State's main *Page 7 
witnesses, and failed to object to leading and repetitive questions during the State's direct examination of K.S.
 {¶ 16} To succeed on this argument, Mr. Emerick would have to show that his lawyer's performance was deficient and that he was prejudiced by the deficiency. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish that his lawyer was deficient, he would have to show that his lawyer's representation "fell below an objective standard of reasonableness." Id. at 688. To establish prejudice, he would have to show that there is a reasonable probability that, but for his lawyer's errors, the result of his trial would have been different. Id. at 694;State v. Bradley, 42 Ohio St. 3d 136, paragraph three of the syllabus (1989). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.
 {¶ 17} Mr. Emerick has argued that his lawyer should have challenged the admissibility of the laptop computer. He has acknowledged in his brief, however, that he gave a police detective permission to search that computer. Moreover, because there was nothing illicit found on the computer, he has failed to demonstrate that he was prejudiced by its admission. Mr. Emerick has also argued that his lawyer should have challenged whether there was probable cause to secure a search warrant for his desktop computer. Because the jury found Mr. Emerick not guilty of all the charges arising from the contents of that computer, however, he has failed to show that he suffered any prejudice as a result of his lawyer's failure to challenge the search warrant.
 {¶ 18} Mr. Emerick has also argued that his lawyer for the first trial should have cross-examined the detective who investigated K.S.'s allegations about his expertise in dealing with child abuse victims. The detective testified that, although "everyone's different," it is not *Page 8 
abnormal for child abuse victims to "have a flat, kind of unemotional [a]ffect and repeat just what happened to them with little or no emotion."
 {¶ 19} Mr. Emerick has argued that his lawyer for the second trial successfully attacked the veracity and credibility of K.S.'s testimony by cross-examining the detective about his expertise with child abuse victims. That lawyer got the detective to concede that "some kids will be flat" when they testify while "some kids will be very excited." The detective also admitted that "kids lie about this stuff," that they sometimes lie to get attention, and that "sometimes they say things that aren't true for no reason."
 {¶ 20} Despite his second lawyer's "successful" cross-examination of the detective, the trial court found K.S.'s testimony credible and convicted Mr. Emerick for gross sexual imposition. Accordingly, Mr. Emerick has not demonstrated that, even if his lawyer for the first trial had cross-examined the detective about his expertise with child victims, the outcome of that trial would have been different.
 {¶ 21} Mr. Emerick has also argued that his lawyer for the first trial should have objected to leading and repetitive questions that the prosecutor posed to K.S. about his alleged acts. He has argued that his lawyer's failure to object allowed the prosecutor to coach K.S. through her testimony and inflame the jury with mental images of a little girl trying to escape from a big man.
 {¶ 22} Mr. Emerick has argued that his trial counsel should have objected during the following exchanges:
 Q Now, [K.S.], what did you do when you felt the Defendant doing this to you? Did you just lay there?
 A Yes. I didn't know what to do.
 Q Okay. That's fair. Fair enough. How long did this go on, do you know? *Page 9 
 A No, I don't know.
 Q Did there come a point in time that you tried to get away?
 A Yes.
 . . . .
 Q Now, [K.S.], when he was on top of you, were you trying to get away from him?
 A Yes.
 Q And why weren't you able to get away from him?
 A He was sitting on top of me, and I can't get out from under him.
 . . . .
 Q So when you came back from the bathroom, is that when he got on top of you?
 A Yes.
 Q Did you want him to be on top of you?
 A No.
 Q How did he put himself on top of you?
 A He put one leg on each side of me.
 Q Did you try to get away?
 A Yes.
 Q Were you able to?
 A Yes.
 Q Were you able to get away immediately?
 A No.
 Q And why weren't you able to get away immediately?
 A He was laying on top of me. It was too hard to get out from under him. *Page 10 
Mr. Emerick has argued that, if his lawyer had objected to those questions, he could have diminished the effect that K.S.'s testimony had on the jury. He has argued that that would have been particularly relevant considering that the jury only convicted him of abduction, which requires restraint by the use of "force or threat." R.C. 2905.02(A)(2).
 {¶ 23} "This Court has consistently held that `trial counsel's failure to make objections is within the realm of trial tactics and does not establish ineffective assistance of counsel.'" State v. Worthy, 9th Dist. No. 23791, 2008-Ohio-1448, at ¶ 19 (quoting State v.Guenther, 9th Dist. No. 05CA008663, 2006-Ohio-767, at ¶ 74). In addition, "Ohio courts have consistently held leading questions asked of a child on direct examination, after prior determination of the child's competency, are not prohibited." State v. Butler, 9th Dist. No. 96CA006343, 1997 WL 66217 at *3 (Jan. 29, 1997) (collecting cases).
 {¶ 24} During omitted parts of the exchange quoted above, Mr. Emerick's lawyer objected to a leading question asked by the prosecutor about how K.S. tried to get away from Mr. Emerick. The trial court overruled the objection, stating that he was "going to allow [the prosecutor] some latitude." Considering that the trial court told Mr. Emerick's lawyer that he was going to allow the prosecutor latitude in his questioning, his lawyer may have made a tactical decision not to object to other leading or repetitive questions because those objections were not likely to be effective. Furthermore, Mr. Emerick has not established that, even if his lawyer had objected during the quoted passages, it is reasonably probable that his objections would have been sustained and that the outcome of his trial would have been different. Mr. Emerick's third assignment of error is overruled. *Page 11 
 CONCLUSION {¶ 25} There is sufficient evidence in the record to support Mr. Emerick's conviction for abduction, and his conviction for gross sexual imposition was not against the manifest weight of the evidence. In addition, Mr. Emerick's lawyer for his first trial was not ineffective for failing to cross-examine a police detective or object to the prosecutor's alleged leading and repetitive questions. The judgment of the Lorain County Common Pleas Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to appellant.
CLAIR E. DICKINSON FOR THE COURT
 SLABY, J. CONCURS *Page 12